580 So.2d 1302 (1991)
Michael HICKS
v.
STATE of Mississippi.
No. 89-KA-1327.
Supreme Court of Mississippi.
May 22, 1991.
*1303 George S. Luter, Jackson, for appellant.
Mike C. Moore, Atty. Gen., Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
PRATHER, Justice, for the Court:
Michael Hicks appeals his conviction of possession of a controlled substance with the intent to distribute in violation of Miss. Code Ann. § 41-29-139 (1972), in the Circuit Court of the First Judicial District of Hinds County. He had been sentenced to eight years' imprisonment, with five years suspended on five years supervised probation.

I. FACTS
On the afternoon of April 3, 1989, at 2:00 p.m., detectives from the Narcotics Division of the Jackson Police Department were involved in surveillance in a drug investigation in "the Washington Edition" area of the city. When the investigation did not materialize in this area, the detectives moved the investigation to the corner of Booker and Harrison Streets.
Detective Larry Isles testified at trial, on November 28, 1989, that he observed Michael Hicks come from behind a building and walk down the street. Hicks crossed the intersection diagonally and walked along the shoulder of the street along a gravel pathway next to a ditch. Detective Isles noticed that Hicks was clutching a small black item which he suddenly pitched across the ditch toward a telephone pole. The item landed between the telephone pole and a guide wire. Detective Isles was about 100 feet from where Hicks threw the black item. Hicks then checked to see if he had been seen and crossed the street in the direction from which he had come.
Detective Isles approached Hicks and asked him to place his hands on the patrol car. Detective Isles then asked the other detectives, Artie Gerard and Jerry Grantham of the Hinds County Sheriff's Department, to watch Hicks while he returned to the spot where he saw Hicks pitch the black item. Detective Isles retrieved a small black film canister; it was the only item there except for a soft drink can. The grass in the area was not overgrown. No other individuals were seen near the guide wire, nor items thrown near it.
Detective Isles then approached Hicks with the canister, and Hicks immediately denied it was his. Detective Isles then opened the canister and discovered it contained eight "quarter paper" packets[1] of cocaine. Hicks provided evasive answers to questions about where he lived. He also had $100 in $10 and $20 bills, even though he was unemployed.
Detective Isles further testified that during drug raids through the area, it was *1304 routine to find stashes of drugs in weeds, under bricks, in tree limbs, under car tires, and other locations without knowledge to whom the drugs belonged. Hicks' action was typical of a drug trafficker  one who does not want to hold the drugs but wants to maintain access and visual contact with the drugs.
Detective Gerard first saw Hicks in front of a store with six or seven other individuals. Detective Gerard noticed Hicks because Hicks left the group just a few minutes after he and Detective Grantham had arrived at the store. After Hicks walked across the street to the telephone pole, Hicks came back to the store where the detective first saw him. Detective Gerard stated that Detective Isles practically walked straight to the canister; there was no searching involved. The remainder of Detective Gerard's testimony and that of Detective Jerry Grantham was similar to that of Detective Isles.
The State also produced Edwina Ard of the Jackson Police Department Crime Laboratory, who testified that she tested the powder inside the packets and determined that it was cocaine hydrochloride. Ard could not state whether the quantity of cocaine was for one person or for some other use.
At the conclusion of the State's case, counsel for Hicks moved for a directed verdict on the basis that the State had failed to meet its burden of proof  i.e., there was no showing that the cocaine was in the dominion and control of Hicks. The trial court denied the motion. Hicks declined to testify or present any witnesses.
The trial court then accepted proposed jury instructions from the parties. Hicks requested a peremptory instruction. The trial court refused the peremptory instruction and a number of Hicks' other proposed instructions, as not being supported by the testimony. The instructions used language requiring the State to establish constructive possession. The jury found Hicks "guilty." The judge sentenced Hicks to eight years imprisonment, five years of which was suspended with supervised probation.
Hicks filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. He asserted that the trial court erred in denying the motion for directed verdict and in failing to grant the peremptory instruction because the verdict was against the overwhelming weight of the evidence, and because his proposed instructions (D-5, D-6, D-7, and D-8) were erroneously refused. The trial court denied the motion.
Hicks appeals to this Court asserting: (1) that the trial court erred in denying his motion for a directed verdict, his request for peremptory instruction, and his motion for judgment notwithstanding the verdict or new trial because the State failed to establish that he possessed the cocaine with the intent to distribute; and (2) that the trial court erred in failing to give instructions D-5, D-6, D-7, and D-8.

II. DISCUSSION

A. DID THE TRIAL COURT ERR IN REFUSING THE MOTION FOR DIRECTED VERDICT, THE PEREMPTORY INSTRUCTION, AND THE MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT OR A NEW TRIAL?
In Brock v. State, this Court stated:
In passing on motions for directed verdicts and requests for peremptory instructions of not guilty, all evidence on behalf of the State is taken as true, together with reasonable inferences that may be drawn therefrom, and, if there is sufficient evidence to support a verdict of guilty, the motion for directed verdict must be overruled and the peremptory instruction must be denied. Barker v. State, 463 So.2d 1080 (Miss. 1985); Shelton v. State, 445 So.2d 844 (Miss. 1984); Wilks v. State, 408 So.2d 68 (Miss. 1981); Bayse v. State, 420 So.2d 1050 (Miss. 1982).

Gill v. State, 485 So.2d 1047, 1049 (Miss. 1986).
Furthermore we point out that:
As for a judgment notwithstanding the verdict, the Court is "not at liberty to *1305 direct that the defendant be discharged short of a conclusion ... that given the evidence, taken in the light most favorable to the verdict, no reasonable hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." Pearson v. State, 428 So.2d 1361, 1364 (Miss. 1983).
Temple v. State, 498 So.2d 379, 381 (Miss. 1986).
530 So.2d at 146, 154 (Miss. 1988).
In Benson v. State, 551 So.2d 188 (Miss. 1989), a request for a new trial was equated with a charge that the verdict was against the overwhelming weight of the evidence. In considering whether a new trial was necessary this Court stated:
Recently in McFee v. State, [511 So.2d 130 (Miss. 1987)] this Court repeated its standard of review for challenges to the legal sufficiency of evidence.
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence  not just that supporting the case for the prosecution  in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. See e.g., Gavin v. State, 473 So.2d 952, 956 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984).

McFee at 133-134. See also Winters v. State, 449 So.2d 766 (Miss. 1984).
This Court will not order a new trial "unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that, to allow it to stand, would be to sanction an unconscionable injustice." Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). Factual disputes are properly resolved by the jury and do not mandate a new trial. Temple v. State, 498 So.2d 379, 382 (Miss. 1986).
Benson, 551 So.2d at 192-93.
In this case the primary challenge to the trial court's actions is whether there was sufficient evidence of an intent to distribute cocaine. Intent to distribute or dispense may be established by circumstantial evidence. Hollingsworth v. State, 392 So.2d 515, 517 (Miss. 1981). Indeed, a jury may reasonably conclude that a defendant intended to unlawfully distribute a controlled substance if the quantity or nature of the seized substance evidences an intent to distribute  as opposed to an intent to merely possess for personal use. Boches v. State, 506 So.2d 254, 260 (Miss. 1987); Coyne v. State, 484 So.2d 1018, 1021 (Miss. 1986). Keys v. State, 478 So.2d 266 (Miss. 1985). Where the quantity or nature is such that it merely reflects possession for personal use as an intent to distribute, then only a suspicion of intent is raised. Stringer v. State, 557 So.2d 796, 797-98 (Miss. 1990); Jackson v. State, 580 So.2d 1217, 1219, (Miss. 1991); Bryant v. State, 427 So.2d 131 (Miss. 1983); Hollingsworth v. State, 392 So.2d 515 (Miss. 1981). A mere suspicion of intent is insufficient to support a conviction. But every case must be considered on its own facts to determine the sufficiency of the evidence to infer intent to deliver.
Examining the facts of this case in the light most favorable to the State, the evidence was insufficient to establish beyond a reasonable doubt that Hicks intended to distribute the cocaine. True, his conduct was similar to that of others who traffic in drugs, and the cocaine was packaged in individual packets. But this evidence is insufficient to allow a reasonable *1306 factfinder to conclude beyond a reasonable doubt that Hicks intended to distribute the cocaine and not keep it for his personal use. Nor does any of the other evidence establish intent to distribute. There was no "sale, attempted sale, or anything suggestive of any intent to deliver." Jackson, supra.
Because of the lack of evidence to establish intent to distribute, the trial court erred in denying Hicks' motion for a directed verdict, and peremptory instruction, and motion for j.n.o.v., relating to the intent to distribute issue. However, this finding does not require this Court to discharge Hicks. The charge of possession of a controlled substance with intent to distribute contains within it the lesser included offense of possession. This case, as was also true in Jackson v. State, supra, is one in which the state prosecuted under Miss. Code Ann. § 41-29-139(a)(1) (Supp. 1990) for possession of cocaine with intent to deliver or dispense. The jury was instructed also as to Miss. Code Ann. § 41-29-139(c) for mere possession.
There was clear evidence that Hicks was in possession of the packets of cocaine. Absent evidence of an entitlement to an exemption from prosecution for possession, Hicks is guilty of possession of a controlled substance. See Bryant, 427 So.2d at 133. Therefore, the conviction is reversed as to possession with intent to distribute. Because there was enough evidence to establish mere possession, the conviction as to the lesser included offense of possession is affirmed and remanded for proper sentencing.

B. DID THE TRIAL COURT ERR IN REFUSING PROPOSED INSTRUCTIONS D-5, D-6, D-7, D-8?
Hicks requested through his proposed instructions that the jury be instructed that in order to find him guilty, the State must prove that he had dominion and control over the cocaine sufficient to establish a possessory interest. The State objected to these instructions as dealing with constructive possession. The trial court refused the instructions as they were not supported by evidence.
Trial courts are required to instruct juries regarding issues of fact only where there appears in the record credible evidence upon which the jury might reasonably find the fact in favor of the requesting party. Ashley v. State, 538 So.2d 1181, 1184 (Miss. 1989). The general rule is that all instructions must be supported by the evidence. Where an instruction is not supported by evidence then it should not be given. Dennis v. State, 555 So.2d 679, 683 (Miss. 1989); Moffett v. State, 540 So.2d 1313 (Miss. 1989); Nicolaou v. State, 534 So.2d 168 (Miss. 1988). Granting instructions not supported by evidence is error. Lancaster v. State, 472 So.2d 363, 365 (Miss. 1985).
The instructions proposed by Hicks and refused by the trial court dealt with constructive possession. Such instructions would only be appropriate if there were no evidence establishing actual possession of the contraband. However, there is clear evidence establishing actual possession by Hicks from the testimony of the detective, who actually saw Hicks with the canister of cocaine packets. The instructions proposed by Hicks were not supported by evidence and were properly refused by the trial court. This assignment is without merit.
CONVICTION FOR POSSESSION OF THE CONTROLLED SUBSTANCE OF COCAINE WITH INTENT TO DISTRIBUTE REVERSED AS TO THE INTENT TO DISTRIBUTE; AFFIRMED FOR MERE POSSESSION OF COCAINE AND REMANDED FOR PROPER SENTENCING.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] "Quarter paper" is a slang phrase which means each packet is worth $25.00.